# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **FREDDIE HUBERT ELSWICK**, | ) |
| Petitioner, | ) Case No. 7:05CV00739 |
| v. | ) **OPINION** |
| **UNITED STATES OF AMERICA,** | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Respondent. | ) |

*Freddie Hubert Elswick, Petitioner Pro Se; Dennis H. Lee, Special Assistant United States Attorney, Tazewell, Virginia, for Respondent.*

Freddie Hubert Elswick, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West 2006). The government has filed a Motion to Dismiss, arguing that petitioner is bound by a valid plea agreement waiver of his right to bring this action. The court notified petitioner of the government's motion as required by *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) and warned Elswick that judgment might be granted for the government if he did not respond to the motion by filing affidavits or other documents contradicting the government's evidence or otherwise explaining his claims. Elswick never responded. Because the time allotted for his response has expired, the matter is ripe for the court's consideration. I find that the Motion to Dismiss must be granted.

I

Elswick and his wife, Jessie Lynn Elswick, were indicted in this court on June 1, 2004. Prior to the federal indictment, a grand jury in the Circuit Court of Tazewell County, Virginia, had indicted Elswick on state charges of distribution of oxycodone and heroin. The four-count federal indictment charged the defendants with conspiracy to distribute oxycodone in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999 & Supp. 2006) (Count One); distribution of oxycodone in violation of § 841(a)(1) (Count Two); and two counts of using, carrying, or possessing a firearm during and in relation to or in furtherance of a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (West 2000 & Supp. 2006) (Counts Three and Four). The court appointed attorney John E. Jessee to represent Elswick.

Elswick thereafter entered into a plea agreement that called for him to enter pleas of guilty to the two firearm counts. The agreement noted that Elswick faced a minimum mandatory sentence of five years on Count Three and a minimum mandatory sentence of twenty-five years on Count Four, to run consecutively to the sentence for Count Three, for a total sentence of thirty years. The agreement reserved Elswick's right to argue for, and the government's right to oppose, a finding that the court should sentence Elswick as though Counts Three and Four were both first offenses, subjecting him to concurrent five-year sentences on the two counts. In

- 2 -

Case 7:05-cv-00739-JPJ-mfu   Document 15   Filed 02/21/07   Page 2 of 16   Pageid#: 240

exchange for the guilty plea, the government agreed to dismiss Counts One and Two. The agreement also included provisions whereby Elswick waived his rights to appeal and his right to collaterally attack his convictions or sentences.[1]

Elswick appeared in court on August 4, 2004, to enter a guilty plea, pursuant to the agreement. After questioning the defendant and hearing the government's evidence in support of the plea, I made a factual determination that Elswick's pleas were knowingly and voluntarily made, found him guilty of Counts Three and Four, ordered a presentence report, and set the case for sentencing on October 25, 2004.

On October 21, 2004, Elswick retained attorney D. Jeffery Coale to represent him on the state and federal charges. Sentencing on the federal charges was rescheduled for November 18, 2004. Coale filed objections to the presentence report on Elswick's behalf. At sentencing, Coale presented written and oral argument contending that the court should sentence Elswick to two concurrent five-year

---

[1] Paragraph 11 of the Plea Agreement stated, "I am knowingly and voluntarily waiving any right to appeal and am voluntarily willing to rely on the Court in sentencing me." Paragraph 12 stated, "I agree not to collaterally attack the judgment and/or sentence imposed in this case and waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court." Both paragraphs included the following additional statement of understanding: "I agree and understand that if I file any court document seeking to disturb, in any way, the judgment and/or sentence imposed in my case, the United States will be free to take whatever actions it wishes based on this failure to comply with my obligations under the plea agreement." Paragraph 20 further specified the remedies the United States might take in the event that Elswick failed to comply with the agreement, which included refusal to dismiss charges or reinstatement of dismissed charges.

- 3 -

sentences on Counts Three and Four. I ruled against Elswick's position and sentenced him to five years (sixty months) incarceration on Count Three and twenty-five years (three hundred months) on Count Four to run consecutively to the sentence on Count Three. I advised Elswick that although he had waived his right to appeal, if he did intend to appeal, he had ten days in which to file a notice of appeal and that he could ask the clerk to prepare and file the notice on his behalf. No notice of appeal was filed. On January 4, 2005, the Circuit Court of Tazewell County, Virginia, entered an order of nolle prosequi on the state drug charges.

Elswick filed his § 2255 motion on November 27, 2005. He alleged the following grounds for relief:

1. That attorney Coale provided ineffective assistance by failing to file a notice of appeal after petitioner asked him to do so;

2. That attorney Jessee provided ineffective assistance in regard to petitioner's guilty plea; and

3. That Elswick was sentenced in violation of the protection against double jeopardy when he received two sentences for two counts based on the same underlying offense conduct.

II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and

- 4 -

voluntary." *United States v. LeMaster*, 403 F.3d 216, 220 (4th Cir. 2005). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22. If the court determines that petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations omitted). The court in *LeMaster* addressed petitioner's ineffective assistance claims bearing on the validity of the plea. *Id.* at 222-23. After finding that such allegations contradicted petitioner's sworn statements at the plea hearing, the court upheld the validity of the § 2255 waiver and dismissed all claims as waived. *Id.* at 223.

The Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights: (1) claims that the sentence exceeds the maximum statutory penalty, (2) claims that the sentence rests on a constitutionally impermissible factor such as race, or (3) claims that defendant was deprived of the assistance of counsel at a proceeding after the entry of the waiver, such as at sentencing. *United States v. Attar*, 38 F.3d 727, 732 (4th Cir.1994). In *Lemaster*, the court implicitly acknowledged that these discrete claims would also be

- 5 -

considered outside the scope of a valid plea agreement waiver of § 2255 rights. *See* 403 F.3d at 220 n.2. Thus, in addition to evaluating the validity of Elswick's guilty plea and waiver of § 2255 rights, I must determine whether each of his § 2255 claims falls within the scope of that waiver.

## A. ELSWICK'S VALID WAIVER.

Before accepting Elswick's guilty plea on August 4, 2004, I questioned him to ensure that his plea was knowing and voluntary. Elswick indicated that he was thirty-eight years old, had completed the eleventh grade in school, could read and write "to an extent," and was not under the influence of alcohol or of any drug that hampered his ability to understand the proceedings. He indicated that he had had adequate time to discuss the indictment and the case with his attorney, that he had initialed each page of his plea agreement and had signed it and understood its terms as summarized by the prosecutor. I asked Elswick whether he understood that under the plea agreement, he waived his right to appeal his sentence and his right to file a collateral attack on his sentence or his conviction; Elswick indicated that he did. He denied that anyone had made any promise to him, outside the provisions of the plea agreement, or otherwise forced him to plead guilty. I reviewed the rights he was waiving by pleading guilty, explained in detail the elements of each charge that the government would have to prove if he went to trial, and heard a summary of the

evidence in support of the plea. Elswick indicated that he did not dispute any of the facts recited by the prosecutor in support of the plea and that he had no questions of the court. He then pled guilty to Counts Three and Four. I found the pleas to be knowing and voluntary, accepted the pleas, and adjudged Elswick guilty of the offenses.

I find that Elswick entered valid guilty pleas and valid waivers of his right to appeal and his right to bring this collateral attack under § 2255. I specifically questioned Elswick during the plea hearing about the waiver provisions. He indicated that he understood the waivers and the consequences of his guilty plea and was voluntarily entering the plea. Moreover, I sentenced him to thirty years, in keeping with the plea agreement and within the statutory limits.

### B. COUNSEL'S ALLEGED ERRORS REGARDING THE PLEA.

Of Elswick's three claims, only Claim Two bears on the validity of his guilty pleas and his plea agreement waivers. In Claim Two, Elswick asserts that his attorney Jessee was ineffective in advising him to plead guilty to Counts Three and Four of the indictment, because Elswick believes he is factually innocent of these offenses. Specifically, he faults counsel for failing to advise him that his charged conduct did not constitute "use" under § 924(c)(1), pursuant to *Bailey v. United States*, 516 U.S.

137 (1995). Based on the government's evidence against Elswick as to Counts Three and Four (Plea Tr. 20-23), I find no merit to Elswick's arguments.

Count Three involved the barter of a gun for drugs. Donald Young and Teresa Young gave statements to law enforcement officers indicating that Jessie Elswick had come to their home in early 2004 to trade a pistol to them in exchange for oxycodone. Officers had seized that very gun during a search of the Youngs' residence. When Elswick was arrested, he gave statements in which he admitted that he and his wife had traded a firearm to the Youngs in exchange for drugs. Elswick confessed that he had directed his wife to take the gun, trade it for the drugs, and bring the drugs back to him. Based on this evidence and Elswick's statements, Count Three properly charged Elswick with knowingly possessing a firearm in furtherance of a drug trafficking offense, in violation of § 924(c)(1).

Elswick asserts that he is not guilty of the offense charged in Count Three because he was not physically present when Jessie Elswick traded the gun for the drugs. It is well established that exchange of a firearm for narcotics constitutes "use" under § 924(c)(1), even when the defendant himself does not handle the weapon. *See Bailey*, 516 U.S. at 146; *Smith v. United States*, 508 U.S. 223, 240 (1993). Elswick himself "used" the firearm in furtherance of a drug trafficking crime at the moment when he turned over the weapon to his wife with the intention that she would trade

or barter that weapon for drugs. *See United States v. Phan*, 121 F.3d 149, 153 (4th Cir. 1997) (finding that defendant's act of giving firearms to fellow conspirator to use in planned robbery was an overt act in furtherance of conspiracy so as to constitute "active employment" of the firearm under § 924(c)(1)). Elswick's undisputed conduct regarding the gun-for-drugs trade thus met the elements of the § 924(c) charge in Count Three.

Elswick argues that he is actually innocent of the offense charged in Count Four because he did not "actively employ" a firearm during a drug trafficking crime and no drugs or money changed hands. The government's evidence in support of Count Four would have been that Elswick, as a dealer of Oxycontin, had employed a man named Nicholas Stiltner to sell the drug for him in early 2002. On one occasion, the two men argued over a drug debt that Stiltner owed to Elswick, and a fight ensued. Stiltner would have testified that during the fight, Elswick produced a .22 caliber pistol and held it to Stiltner's head.[2] Other witnesses also indicated that Elswick frequently kept a firearm in his back pocket while conducting drug deals.

---

[2] Elswick asserts that he was not carrying the firearm on the occasion when he fought with Stiltner and that in fact, he wrestled the firearm from Stiltner only after Stiltner threatened him with the gun. Other witnesses would have supported this version. All the government's witnesses agreed, however, that at one point, Elswick held the gun to Stiltner's head. Elswick also notes that as part of the plea agreement, the government stipulated that Elswick neither brandished nor discharged the firearm during this incident. Brandishing and discharging, however, are not required elements of a § 924(c) charge for use.

- 9 -

In the *Bailey* decision, the Supreme Court held that display of a firearm during and in relation to a drug trafficking offense constitutes "use" of a firearm under § 924(c)(1).[3] Elswick's display of a firearm in his back pocket during drug transactions meets this definition, as does his placement of the firearm against Stiltner's head over a drug debt. Thus, I find no merit to Elswick's argument that he is innocent of the § 924(c)(1) offense charged in Count Four.

Because Elswick fails to demonstrate that counsel acted unreasonably when advising about the elements of § 924(c)(1), I cannot find that counsel's actions in any way undermined the validity of Elswick's guilty plea to Count Three. Therefore, I conclude that Elswick entered a valid plea agreement, waiving his right to appeal and his right to bring this § 2255 action. I also find that Claims Two and Three clearly fall within the scope of the § 2255 waiver and do not present any of the noted exceptions that would preclude the waiver from being enforced.

---

[3] In 1998, well before Elswick's offense conduct, Congress amended § 924(c)(1) to also make illegal the "possession" of a firearm "in furtherance of" a drug trafficking crime. *See United States v. Lomax*, 293 F.3d 701, 704 (4th Cir. 2002) (describing legislation). Clearly, the government's evidence here would prove that Elswick possessed a firearm in furtherance of his drug trafficking activities as charged in Counts Three and Four.

### C. Counsel's Alleged Refusal to File Notice of Appeal.

It is well established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In such situations, the attorney's omission causes the defendant to lose the ability to protect his "vital interests at stake" in the appeal process. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Flores-Ortega*, 528 U.S. at 477. A habeas petitioner who proves these circumstances is entitled to a renewed opportunity to appeal even if he does not or cannot demonstrate any likelihood that his appeal has any potential merit. *Rodriquez v. United States*, 395 U.S. 327, 329-30 (1969). Arguably, because such a claim alleges deprivation of counsel at a critical stage of the proceedings, it falls outside the scope of a valid waiver of § 2255 rights. *See, e.g., Attar*, 38 F.3d at 732-33 (finding that waiver of appeal rights did not bar claim that defendants were denied their Sixth Amendment right to counsel at sentencing). On the other hand, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (citing *Jones v. Barnes*, 463 U.S. 745, 751(1983) (finding that accused has ultimate authority to make fundamental decision whether to take an appeal)).

- 11 -

When the defendant has not made his intentions regarding appeal clear to counsel, the attorney nevertheless may have a constitutional duty to consult with the client about the advantages and disadvantages of taking an appeal, depending on the defendant's specific circumstances. *See id.* Such claims are governed under a slightly modified version of the two-part test for ineffective assistance—deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 477. If counsel did not consult with the defendant about an appeal, the issues are (1) whether "a rational defendant [in the same circumstances] would want to appeal (for example, because there are nonfrivolous grounds for appeal), or . . . this particular defendant reasonably demonstrated to counsel that he was interested in appealing," and (2) whether "there is a reasonable probability that, but for counsel's deficient failure to consult with [the defendant] about an appeal, he would have timely appealed." *Id.* at 480, 484.

In Claim One of his § 2255 motion, Elswick alleged that he asked counsel to file a notice of appeal, but counsel failed to do so. Based on *Attar* and *Flores-Ortega*,

I will not treat this claim as waived. Nevertheless, I find that the Motion to Dismiss must be granted.

In support of Claim One, Elswick states that even before the close of the sentencing hearing itself, he informed attorney Coale that he wished to appeal his thirty-year sentence. Verbally and in writing, Coale advised against an appeal.[4] He told Elswick and his family, however, that he would file a notice of appeal and prepare appeal briefs if they retained him to do so by paying him an additional fee of $2,500 by 11:00 a.m. on November 29, 2004, the last day for Elswick to file a timely notice of appeal. He also informed Elswick, in writing, that if Elswick wanted to pursue an appeal, but not on Coale's terms, Elswick could call the court clerk's office at the listed telephone numbers for assistance. On November 29, Coale drafted a memo to confirm that Elswick's mother, Helen Elswick, had informed Coale that morning that Elswick did not wish to appeal his convictions. Coale faxed the memo to Elswick at the jail. Elswick signed the memo and faxed it back to Coale's office

---

[4] Exhibit G to the Motion to Dismiss is a lengthy affidavit from Coale concerning his representation of Elswick. Attached to the affidavit are copies of letters Coale sent Elswick, documenting their discussions about the plea agreement and the advisability of filing an appeal, among many other things. Elswick has not disputed the authenticity of these documents, including the one dated November 29, 2004, in which he told Coale that he had decided not to pursue an appeal.

- 13 -

just after noon, indicating that "after consulting with Mr. Coale, and speaking with my family, and considering all of my options," he had decided not to appeal.

This case does not present a situation where a criminal defendant asked his attorney to file the notice of appeal, relied on the attorney to do so, and then lost his right to appeal when the attorney did not file the notice as requested. Elswick knew that Coale would not file the notice of appeal unless Elswick first paid the attorney's retainer. He also knew that the clerk's office would assist him if he wished to pursue an appeal without retaining Coale. As Elswick never lost his ability to protect his right to appeal by filing his own notice of appeal, I find that this case does not fall under *Evitts* or *Rodriquez* such that prejudice is presumed. Rather, this claim implicates counsel's potential duty to consult with his client about an appeal, as defined in *Flores-Ortega*. Counsel thoroughly embraced this duty to consult, as evidenced by the extensive and detailed advice he offered his client, verbally and in writing, about the benefits of the plea agreement[5] and the danger that an appeal would jeopardize those benefits as well as Elswick's chances to earn a substantial assistance motion. Moreover, the government's documentation demonstrates that in failing to

---

[5] Coale states, and Elswick does not dispute, that among other benefits, the state charges against Elswick from Tazewell County were dismissed as a result of the plea agreement. Coale warned Elswick that an appeal would breach the plea agreement and expose him to the risk that some or all of the dismissed charges would be reinstated, subjecting him to the possibility of three life sentences plus forty years if convicted.

file a notice of appeal, Coale followed his client's express wishes as stated in writing and signed by Elswick on November 29, 2004.

The essence of Claim One is that Coale's consultation with Elswick about a possible appeal did not inform him of his right to request court-appointed counsel on appeal if he could not afford Coale's retainer. I cannot find deficient performance here. Coale states that Elswick and his family never informed him that they could not afford the additional retainer for the appeal or that they were having trouble obtaining the money in time. Elswick's submissions dispute this fact. This dispute is not material, however, as Coale provided Elswick with telephone numbers for the clerk's office to call if he needed "assistance" with an appeal. Elswick or his mother or other family members could have called this number and quickly learned about the potential to have counsel appointed for an appeal. Furthermore, Elswick fails to demonstrate prejudice. Given the enormous benefits he received by virtue of his plea agreement in dismissed charges alone, he fails to show any reasonable probability that but for counsel's failure to advise him about court-appointed counsel, he would have filed a timely, pro se notice of appeal. As Claim One fails under all aspects of the *Flores-Ortega* ineffective assistance inquiry, I find that the Motion to Dismiss must be granted as to this claim.

## III

For these reasons, I find that the Motion to Dismiss must be granted as to Claim One because this claim is without merit, and as to Claims Two and Three, because Elswick entered a valid plea agreement waiver of his right to bring this action under § 2255.

A separate Final Order will be entered herewith.

DATED: February 21, 2007

/s/ JAMES P. JONES
Chief United States District Judge